**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | **CRIMINAL NO. 05-133** |
| **JOSEPH TAYLOR** | : | |
| a/k/a "Nate Taylor" | | |

**SENTENCING MEMORANDUM**

The United States of America, by Patrick L. Meehan, United States

Attorney for the Eastern District of Pennsylvania, and Michael J. Bresnick, Assistant

United States Attorney, respectfully submits this Sentencing Memorandum to assist the

Court in sentencing the defendant on October 11, 2005.

**I.      INTRODUCTION**

On March 9, 2005, a federal grand jury returned a two-count indictment, charging

the defendant with knowingly and intentionally distributing, and aiding and abetting the

distribution of, 5 grams or more, that is approximately 8.2 grams, of a mixture or substance

containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance, in

violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B), and Title 18,

United States Code, Section 2 (Count 1), and doing so within 1,000 feet of a school (Count 2).

On June 6, 2005, the defendant entered a plea of guilty to Count One pursuant to a written

plea agreement, and the Court accepted the defendant's plea.

**II.    PLEA AGREEMENT**

The government and the defendant executed a guilty plea agreement.  Pursuant to

this agreement, the defendant agreed to plead guilty to Count 1 of the indictment.  The defendant

also agreed to pay the special victims/witness assessment in the amount of $100, at or before

sentencing.  In addition, the defendant agreed to the following facts regarding his sentencing:

The defendant's base offense level is 26, pursuant to U.S.S.G. §§ 2D1.l(a)(3) and 2D1.1(c)(7),

because the amount of cocaine base he distributed, or aided and abetted the distribution of, that

is, 8.2 grams, was at least five grams but less than twenty grams.  As of the date of the

agreement, the defendant has demonstrated acceptance of responsibility for his offense, making

the defendant eligible for a 2-level downward adjustment pursuant to U.S.S.G. § 3E1.1(a).  Also

as of the date of the agreement, the defendant has assisted authorities in the prosecution of his

own misconduct by timely notifying authorities of his intention to enter a plea of guilty, making

the defendant eligible for an additional 1-level downward adjustment pursuant to U.S.S.G. §

3E1.1(b).

      In addition, the parties agreed that at the time of sentencing the government will

move to dismiss Count 2 of the indictment.  The defendant waived the statute of limitations as to

Count 2 under the agreement and agrees that if the defendant withdraws from, or successfully

challenges, the guilty plea entered under this agreement, or if this count is otherwise reinstated

under the terms of this agreement, neither the statute of limitations nor the Double Jeopardy

Clause will bar prosecution on this dismissed count.  The defendant also stated that he

understands and agrees to the following as to Count 1: (i) that the government will make

whatever sentencing recommendation as to imprisonment, fines, forfeiture, restitution and other

matters which the government deems appropriate, and will comment on the evidence and

circumstances of the case; (ii) that the government will bring to the Court's attention all facts

relevant to sentencing, including evidence relating to the dismissed count, and to the character

and any criminal conduct of the defendant; (iii) that the government will address the Court

regarding the nature and seriousness of the offense; (iv) that the government will respond

factually to questions raised by the Court; (v) correct factual inaccuracies in the presentence

report or sentencing record; and (vi) that the government will rebut any incorrect statement of

facts made by or on behalf of the defendant at sentencing.

       The agreement between the defendant and the government further states that the

government understands that the defendant will contend that the defendant has satisfied the

"safety valve" provisions of 18 U.S.C. §§ 3553(f)(1)-(5) and USSG § 5C1.2 and that the

defendant is eligible to receive a two-level downward Guidelines adjustment and to be sentenced

below the statutory mandatory minimum sentence otherwise required.  The defendant

understands that the government has reserved its right to take whatever position on this issue that

it deems appropriate.  Also, nothing in the agreement shall limit the government in its comments

in, and responses to, any post-sentencing matters.

       In exchange for the undertakings made by the government in entering this plea

agreement, the defendant voluntarily and expressly waived all rights to appeal or collaterally

attack the defendant's conviction, sentence, or any other matter relating to this prosecution,

whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. §

1291, 28 U.S.C. § 2255, or any other provision of law.  Notwithstanding the waiver provision, if

the government appeals from the sentence, then the defendant may file a direct appeal of his

sentence.  If the government does not appeal, then notwithstanding the waiver provision set forth

in the guilty plea agreement, the defendant may file a direct appeal but may raise only claims that

the defendant's sentence exceeds the statutory maximum as set forth in the Agreement, or the

sentencing judge unreasonably departed upward from the otherwise applicable sentencing guideline range.

## III.    FACTUAL BACKGROUND

DEA Special Agent Patrick J. Trainor had been assigned to investigate the drug trafficking activities of the defendant, Joseph E. Taylor.  In December 2004, Trainor received information from a confidential source that the defendant, who is known to the source as "Nate," was engaged in the sale of half-ounce quantities of crack cocaine in the Mantua section of Philadelphia.  On January 10, 2005, at approximately 4:00 p.m., under the direction of Trainor and other Special Agents of the DEA, the source called the defendant at (267) 312-2662 and left him a message to arrange for the purchase of approximately one half-ounce of crack cocaine for $450.  The source previously had identified this mobile telephone number as being used by the defendant.  This conversation was audio recorded.

On January 12, 2005, at approximately 1:42 p.m., the source received an incoming call from the defendant.  During this call, which was recorded and witnessed by Trainor and other Special Agents of the DEA, the source confirmed a purchase price of $450 and agreed to meet in fifteen to twenty minutes.  At approximately 2:06 p.m., the source met the defendant at his residence at 757 North 40th Street in Philadelphia.  During this meeting, which was audio recorded and monitored by Trainor, the defendant asked the source if he was a police officer and counted out the $450 handed to him by the source.

Shortly thereafter, the defendant directed the source to walk with him to 724 North 40th Street in Philadelphia, where the defendant and the source met with an unidentified black woman.  At the defendant's direction, this unidentified female gave the source an amount

of crack cocaine for $450.  Prior to this meeting, Trainor had searched the source for contraband and found nothing.

Trainor later conducted a narcotics field test on the crack cocaine that the source obtained from the defendant and the unidentified woman.  It tested positive for the presence of cocaine.  A formal chemical analysis of the substance at the DEA's Northeast Regional Laboratory in New York City later revealed that the source had received approximately 8.2 gross grams of cocaine base.

## IV.   GUIDELINE CALCULATIONS

### A.   Sentencing Guidelines Range:

The government agrees with the Probation Office's Pre-Sentence Investigation Report, at Paragraph 23, that the defendant's Total Offense Level is 21 and that the defendant has satisfied the provisions of the so-called "Safety Valve."  The government further agrees with the Report, at Paragraph 59, that the defendant is a Criminal History Category I.  Accordingly, the government agrees with the Report, at Paragraph 59, that the defendant's sentencing range under the U.S. Sentencing Guidelines is 37-46 months imprisonment.

## V.   STATUTORY MAXIMUM SENTENCE

The maximum penalty for a violation of **Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)** (distribution of 5 grams or more of cocaine base) is 40 years imprisonment, including a mandatory minimum of five years imprisonment, a $2 million fine, a

mandatory minimum of four years supervised release up to a lifetime of supervised release, and a special assessment of $100.

## VI.    **GOVERNMENT'S SENTENCING RECOMMENDATION**

The government respectfully requests the Court to impose a sentence at the low end of the Guidelines range.

Respectfully submitted,

PATRICK L. MEEHAN
United States Attorney


_____

THOMAS R. PERRICONE
Chief, Narcotics Unit


_____

MICHAEL J. BRESNICK
Assistant United States Attorney

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Government's

Sentencing Memorandum has been served via facsimile this date upon counsel for

defendant:

David Kozlow
Defender Association of Philadelphia
Federal Court Division
Suite 540 West - The Curtis Center Building
Independence Square West
Philadelphia, PA 19106

_____

MICHAEL J. BRESNICK
Assistant U.S. Attorney

Date: October 4, 2005